**Darryl W. WALDEN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 10405.

District of Columbia Court of Appeals.

Submitted Sept. 8, 1976.

Decided Dec. 1, 1976.

Ronald G. Nathan, Washington, D.C., was on the brief for appellant.

Earl J. Silbert, U. S. Atty. and John A. Terry, William D. Pease, Peter A. Chapin, David M. Bullock, and Larry C. Willey, Asst. U. S. Attys., Washington, D.C., were on the brief for appellee.

Before YEAGLEY, HARRIS and MACK, Associate Judges.

HARRIS, Associate Judge:

Appellant charged with armed robbery, robbery, assault with a dangerous weapon, and carrying a pistol without a license [D.C.Code 1973, §§ 22–2901, –3202; 22–2901; 22–502; and 22–3204], pleaded guilty to armed robbery in satisfaction of the entire indictment. He was sentenced to five-to-fifteen years' imprisonment. He appeals the denial of a motion to reduce his sentence. We affirm.

Due to an administrative error (the details of which are not reflected by the record), appellant's motion was not reached for consideration until over two years after imposition of sentence. *See* Super.Ct. Cr.R. 35(a). The trial court scheduled a hearing at which appellant testified as to his own alleged rehabilitation, and a friend and various family members testified that they could give him the necessary support in returning to the community, continuing his education, earning a livelihood, and avoiding future criminal conduct. The trial judge noted that such testimony had to be weighed in light of the fact that it all came from the prisoner or witnesses friendly to him, and indicated that had the hearing been held within the 120-day period provided by Rule 35(a), he would have denied the motion. However, he observed that because of the long delay, information on appellant's actual record in prison was available. Accordingly, the court stated that it was willing to consider such information before ruling upon the motion. Counsel for both the government and the appellant accepted that suggestion, and the judge continued the hearing until after he had time to examine records from the Bureau of Prisons.

At a second hearing, the judge announced that he had examined the records only to determine whether there was evidence of such rehabilitation as might induce him to reduce a sentence which had not been excessive in light of the circumstances at the time of its imposition or under the evidence revealed at the original hearing. He found that the prison records failed to show rehabilitation, and the motion was denied.

■ Our precedents demonstrate the fact that it is not our role to review sentences which are within statutory limits. *Banks v. United States,* D.C.App., 307 A.2d 767 (1973); *Foster v. United States,* D.C. App., 290 A.2d 176, 179 (1972). *See Fludd v. United States,* D.C.App., 336 A.2d 539, 541 (1975). We have shown similar deference to the trial court's discretion in the exercise of its sentencing power in the context of a post-trial motion to reduce a sentence. *Banks v. United States, supra.* It would be nonsensical to have a broader scope of review of a ruling on a motion to reduce a sentence than of the original imposition of sentence.

■■ The case law under Fed.R.Crim. P. 35 [the language of which is tracked by Super.Ct.Cr.R. 35(a)] supports the principle of broad deference to a ruling by the

trial court on a motion to reduce sentence.[1] A motion for reduction in sentence is basically "a plea for leniency". *Poole v. United States,* 102 U.S.App.D.C. 71, 76, 250 F. 2d 396, 401 (1957). *See Jones v. United States,* 117 U.S.App.D.C. 169, 173 n.18, 327 F.2d 867, 871 n.18 (1963); *United States v. Slutsky,* 514 F.2d 1222, 1226 (2d Cir. 1975); *United States v. Ellenbogen,* 390 F.2d 537, 543 (2d Cir), *cert. denied,* 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968). Such a motion is addressed to the trial court's sound discretion. *E.g., United States v. Slutsky, supra,* at 1226; *Lee v. United States,* 501 F.2d 494, 501 (8th Cir. 1974); *United States v. Bethany,* 489 F.2d 91 (5th Cir. 1974); *Green v. United States,* 157 U.S.App.D.C. 40, 481 F.2d 1140 (1973); *United States v. Stumpf,* 476 F.2d 945 (4th Cir. 1973); *United States v. Kohlberg,* 472 F.2d 1189 (9th Cir. 1973); *United States v. Brown,* 428 F.2d 1191, 1193 (7th Cir.), *cert. denied,* 400 U.S. 941, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970). *See United States v. Donohoe,* 458 F.2d 237 (10th Cir. 1972). Although the verbal formulations vary, the scope of appellate review of decisions on sentence reduction motions is very limited. It has been described as "quite narrow" [*United States v. Slutsky, supra,* at 1226], or as limited to cases of "abuse of discretion" [*United States v. Donohoe, supra,* at 239], or "clear abuse of discretion" [*United States v. Stumpf, supra,* at 946], or "arbitrary or capricious action amounting to a gross abuse of discretion" [*Taylor v. United States,* 456 F.2d 1101, 1103 (5th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 137, 34 L.Ed.2d 101 (1972)]. Basically, an appellate court may not substitute its judgment for that of the trial court, even if the prisoner presents "an affecting case for reconsideration of the sentence". *United States v. Krueger,* 454 F.2d 1154, 1155 (9th Cir. 1972).

Appellant's five-to-fifteen-year sentence was far less than the statutory maximum, which is life imprisonment. D.C.Code 1973, § 22–3202(a)(1). Appellant acknowledged that he had committed armed robbery, as well as at least three prior offenses, and that he had been a half-way house resident at the time he committed the robbery. We are not presented with a first offender who had lapsed briefly from a long course of exemplary conduct. *Cf. State v. Malolepsky,* 24 Conn.Supp. 304, 190 A.2d 231 (1963).

■■ The single unusual factor in this case is the trial judge's examination of appellant's prison records. He indicated that he examined them only to consider unbiased evidence of possible rehabilitation which might induce him to grant a motion which he otherwise would deny. Appellant claims that the records were vague, conclusory, unsubstantiated, inaccurate, and unreliable, and suggests that their utilization contravened due process principles. On the question of whether the court abused its discretion, it suffices to point out that appellant was not prejudiced by the court's search for information which might favor a grant of relief. Assuredly the court was not obliged to consult such records on entertaining a motion to reduce a sentence, as the examination of postsentencing developments is traditionally the province of the Board of Parole in making parole decisions rather than of the trial judge in entertaining a sentence reduction motion. *See Burrell v. United States,* D.C.App., 332 A.2d 344, 346 (1975); *United States v. Maynard,* 485 F.2d 247 (9th Cir. 1973); *United States v. Haggett,* 360 F.Supp. 502, 503–04 (S.D.N.Y.1973); *cf. United States v. Krueger, supra. See also State v. Dunn,* 111 N.H. 320, 282 A.2d 675 (1971).

Appellant, in his due process attack on the trial court's reference to the prison

1. The two rules have been identical, but minor changes recently were made in the Superior Court's Rule 35(a) which make it differ from the corresponding federal rule in minor ways which are not relevant here.

We have held that Superior Court rules which parallel the language of the corresponding federal rules should be construed in light of the construction given to the latter. *Campbell v. United States,* D.C.App., 295 A.2d 498, 501 (1972).

records, relies upon *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), in which the Supreme Court held that an uncounseled defendant had been denied due process when a judge pronounced sentence in reliance upon inaccurate information about his criminal record. The Court there stressed that the lack of counsel was prejudicial, as counsel would have been in a position to correct the misinformation. 334 U.S. at 740–41, 68 S.Ct. 1252. The Court stated: "In this case, counsel might not have changed the sentence, but he could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records, a requirement of fair play which absence of counsel withheld from this prisoner." *Id.* at 741, 68 S.Ct. at 1255.

The Supreme Court subsequently recognized that the absence of counsel was the key factor in *Townsend. See Mempa v. Rhay,* 389 U.S. 128, 133, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *Crooker v. California,* 357 U.S. 433, 440, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958), *overruled in Miranda v. Arizona,* 384 U.S. 436, 479 n.48, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also Carnley v. Cochran,* 369 U.S. 506, 517–19 & 518 n.1, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) (Black, J., concurring). Since *Townsend* was decided during the unlamented era of *Betts v. Brady,* 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), *overruled in Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in which the Court declined to require counsel in state criminal prosecutions absent special circumstances, we could dispose of appellant's argument merely by pointing out that he had counsel at all stages of his case.

■ There, are, however, further differences between this case and *Townsend.* Appellant has not shown that the prison records were inaccurate and unreliable. The only Prison Bureau documents before us are in the appellant's brief, and the government has agreed to treat them as part of the record. They consist of a "Progress Report" and a series of "Incident Reports" dealing with appellant's misconduct in prison. Although the Progress Report contains some conclusory language, the Incident Reports are quite specific, detailing a long sequence of disciplinary violations. They show that appellant was allowed to respond to the charges (some of which he admitted), and that some sort of adjudicatory committee considered the accusations. They do not on their face show such arbitrariness, procedural unfairness, or untrustworthiness as to preclude the trial court from relying upon them. The reports fully support the trial court's finding that appellant had not been rehabilitated (although the denial of the motion need not have been supported by any such finding).

■ Unlike the prisoner in *Townsend,* appellant was not being deprived of liberty. While his wish for a shortened period of incarceration was disappointed, he was not denied any substantial right. *See Burrell v. United States, supra,* 332 A.2d at 346. *Cf. Green v. United States, supra* (prisoner has no right to work release). Any hope appellant had of accelerating his return to liberty through the largesse of the sentencing judge was so ephemeral that it could not be part of that liberty which due process protects. Even were we to assume that appellant was treated unfairly (and there is no indication that he was), he did not face the possibility of grievous loss which triggers the right to procedural due process. *See Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 262–63, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

■ Because the trial court did not abuse its discretion and did not deny appellant any significant right, we do not disturb its ruling.

*Affirmed.*