**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Joseph E. KROHN, Defendant-Appellee.**

**No. 82–3262.**

United States Court of Appeals,
Fifth Circuit.

March 21, 1983.

Shelly C. Zwick, Asst. U.S. Atty., Robert J. Erickson, Atty., Dept. of Justice, Crim. Div., Washington, D.C., for plaintiff-appellant.

John T. Mulvehill, Fed. Public Defender (Court-appointed), Herbert V. Larson, Jr., Asst. Fed. Public Defender, New Orleans, La., for defendant-appellee.

Before JOHNSON, WILLIAMS and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

We are asked to decide as a general matter whether district courts retain jurisdiction over timely-filed motions for reduction of sentence for a reasonable time beyond a lapse of Rule 35's 120-day period, and if so, whether the district court's ten-month delay in rendition of the ruling before us was within the bounds of reasonableness. We decline the invitation to retreat from our long-standing construction of the jurisdictional confines of Rule 35. We find that the district court had jurisdiction to rule as it did, and affirm.

## I.

Joseph Krohn and co-defendants Charles McDonald, Edward Gantt, Sharon Magee, and Virginia Kimes were charged in a multi-count indictment with conspiring to possess unregistered firearms and controlled substances,[1] and with the commission of various related substantive offenses.[2] The defendants eventually reached a plea bargain with the United States Attorney. Krohn, Gantt, Magee, and Kimes agreed to plead guilty to the conspiracy count in return for dismissal of the substantive charges against them. McDonald agreed to plead guilty to the conspiracy charge and to two counts charging separate instances of possession and distribution of Quaaludes. The district court examined their pleas in a unitary Rule 11 proceeding, and accepted them all.[3] On December 19, 1980, the district court pronounced sentence on all five. Krohn drew the maximum term of five years imprisonment, and was fined $3000. The other defendants were given varying sentences.[4]

On April 15, 1981, 117 days after his sentence was imposed, Krohn moved for a reduction of his sentence pursuant to Fed.R. Crim.P. 35(b). In support of his motion, Krohn claimed that he had no prior criminal record, that he was remorseful of his admitted participation in the criminal enterprise, and that given his comparative culpability, he had received a disproportionately harsh sentence.[5] Co-defendants Gantt and Magee filed similar motions several days later; apparently, Kimes also moved for Rule 35 relief about that time.[6] The Government answered Krohn's motion near the end of April, Magee's and Kimes' motions in early June, and Gantt's motion on June 15. Those motions were still pending on July 17, when co-defendant McDonald filed a collateral attack on his sentence under 28

---

**1.** The conspiracy was alleged to violate 18 U.S.C. § 371.

**2.** In addition to the conspiracy count, Krohn was charged with possession with intent to distribute and distribution of Quaaludes, in violation of 21 U.S.C. § 841(a)(1), and with interstate travel to promote an unlawful activity, in violation of 18 U.S.C. § 1952(a)(3). The remaining defendants were variously charged with these and other crimes.

**3.** Testimony at that hearing established that the defendants had schemed to sell massive quantities of Quaaludes to federal undercover agents in exchange for automatic weapons and cash. Co-defendant McDonald was apparently the ringleader; with the assistance of co-defendants Magee and Kimes, he arranged for the trade to be made in Baton Rouge, Louisiana, with delivery of the Quaaludes in two separate installments. McDonald and Gantt made the first delivery of about 55,000 Quaaludes. Gantt then flew to Florida, loaded over 200,000 Quaaludes into a Ford LTD, and was joined by Krohn for the drive back to Baton Rouge. Krohn delivered the drugs to the waiting undercover agents, then proceeded to inspect the guns and count the $165,000 in cash offered in exchange. McDonald showed up a short while later. Arrests were made the same day.

**4.** McDonald received a cumulative sentence totalling 15 years imprisonment, $30,000 in fines, and a special parole term of 25 years. Kimes was sentenced to five years imprisonment and was fined $5000. Gantt and Magee were each sentenced to two years imprisonment and fined $2000.

**5.** Two weeks later, Krohn augmented the grounds urged in support of his motion with a claim that the conditions of the parish jail in which he was incarcerated were intolerable. The district court did not avert to this argument in its decision. We therefore have no occasion to consider whether supplemental materials filed in support of an otherwise timely motion, but after the Rule 35 period has expired, are properly before the Court. Cf. *United States v. Mendoza*, 565 F.2d 1285, 1290 (5th Cir.), *as modified*, 581 F.2d 88 (5th Cir.1978) (*en banc*); *United States v. United States District Court*, 509 F.2d 1352 (9th Cir.), *cert. denied*, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975).

**6.** Although the docket sheets do not indicate whether Kimes' motion was among the defendants' spate of last-minute pleas, we do know that the Government filed its reply to her motion contemporaneously with its replies to the others, and that the district court ruled on it in its comprehensive disposition of the co-defendants' several attacks on their sentences, *see post* at 1035.

In its memorandum opinion ruling on the request for post-conviction relief, the district court stated that Gantt's, Magee's, and Kimes' motions were timely filed. The Government does not challenge this determination.

U.S.C. § 2255.[7] The motions laid dormant over the next several months, while proceedings on McDonald's petition stretched into the end of November.

On February 5, 1982, the district court ruled on all of the pending Rule 35 motions and the section 2255 petition. Krohn's motion was granted, with a reduction in his term of imprisonment from five to three years. In explanation, the district court stated:

> At the time the sentence was imposed, the court was under the impression that this defendant was involved in the drug offenses at a very high level. After carefully reviewing all of the information relative to all five of these defendants, the court is now convinced that it was in error regarding the involvement of Joseph E. Krohn. The court is now convinced that Krohn was involved more as an underling or simply an employee who performed delivery services for hire. While reprehensible, his conduct was not at the higher level which the court assumed at the time of sentencing. For these reasons, a reduction in sentence is appropriate.

Magee's sentence was also modified: the district court found her impecunious, and eliminated her $2000 fine. The remaining motions and petition were denied. On March 3, the Government asked the district court to reconsider its decision. It argued that because the district court failed to act within the 120-day time period established by Rule 35, it was without jurisdiction to reduce Krohn's and Magee's sentences; in the alternative, it argued that the Court's ten-month delay in ruling on the motions was unreasonable, and that excessive deferral of its decision had stripped the court of jurisdiction. The district court disagreed. In an order entered March 24, it explained that it "ha[d], at all times, attempted to consider all of these five defendants who were involved in the same criminal activities as a unit." For that reason, it had withheld decision of the Rule 35 motions until the section 2255 petition was ripe for judgment. The court concluded that the section 2255 proceedings had been completed as expeditiously as possible, "considering the delays requested both by McDonald's attorneys and by the government," and refused to withdraw its order. It did agree, however, to adopt the Government's suggestion that it reinstate Magee's fine, but delete the portion of its original judgment requiring that she stand committed until the fine is paid. The Government appeals the district court's decision that it had jurisdiction to reduce Krohn's sentence.

## II.

Several years ago, it seemed that the dimensions of district court jurisdiction over Rule 35(b) motions were fairly well defined. This court had held, in a unanimous *en banc* decision, that

> if a motion to reduce sentence is properly filed within the 120 days required by the statute, the district court retains jurisdiction for a reasonable time after the expiration of 120 days in those rare circumstances in which it is unable to decide the motion within the 120-day period.

*United States v. Mendoza,* 581 F.2d 88, 90 (5th Cir.1978) (*en banc*), *modifying,* 565 F.2d 1285 (5th Cir.). In ruling that sentencing courts' jurisdiction can in certain circumstances exceed that expressly defined by the terms of Rule 35, the Court joined every other circuit court which had considered the issue, *see Dodge v. Bennett,* 335 F.2d 657 (1st Cir.1964); *United States v. Janiec,* 505 F.2d 983 (3d Cir.1974), *cert. denied,* 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 427; *United States v. Stollings,* 516 F.2d 1287 (4th Cir.1975); *United States v. Williams,* 573 F.2d 527 (8th Cir.1978); *United States v. United States District Court,* 509 F.2d 1352 (9th Cir.), *cert. denied,* 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975).

---

7. In support of his petition, McDonald alleged, *inter alia,* that his guilty plea was involuntary because he had not had effective assistance of counsel at the time of his plea. We note that the same attorney represented both McDonald and Krohn in connection with their arraignments, plea agreements, and entries of pleas.

The consensus within this Court and among the courts of appeals developed despite the acknowledgment that a literal reading of Rules 35(b) and 45(b) would lead to a contrary conclusion. Rule 35(b) provides in pertinent part that:

[t]he court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal. . . .

Rule 45(b) provides that "the court may not extend the time for taking any action under Rule [] . . . 35 . . . ." Together, these Rules seemingly impose a firm outer limit on the period in which a district court is empowered to act. But prosaic operation of the Rules proved harsh and arbitrary. Meritorious motions timely filed fell by the wayside under the press of the docket. Defendants were forced to bear the consequences of circumstances wholly beyond their control. *See Mendoza,* 565 F.2d at 1290; *accord, Williams,* 573 F.2d at 528; *Stollings,* 516 F.2d at 1288–89; *United States v. Ourso,* 417 F.Supp. 113, 114 (E.D. La.1976). Mindful of Justice Black's admonition that "justice not be thwarted by those with too little imagination to see that procedural rules are not ends in themselves,

but simply means to . . . the achievement of equal justice for all," *Berman v. United States,* 378 U.S. 530, 84 S.Ct. 1895, 1899, 12 L.Ed.2d 1012 (1964) (J. Black, dissenting), and mindful as well that the Rule was first adopted to alleviate the arbitrariness of the common-law "term of court" rule,[8] *see Mendoza,* 565 F.2d at 1290, the courts softened the Rule's inflexibility with an injection of equity.

The Government now suggests that *Mendoza's* gloss on the Rule was wiped away by a subsequent Supreme Court decision. *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 2242–43, 60 L.Ed.2d 805 (1979) contains a statement that:

Federal Rule Crim.Proc. 35 now authorizes district courts to reduce a sentence within 120 days after it is imposed or after it has been affirmed on appeal. *The time period, however, is jurisdictional and may not be extended.*[17]

---

[17] *See* Fed.Rule Crim.Proc. 45(b); *United States v. Robinson,* 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259.

(emphasis added). The Government claims that the emphasized language firmly and clearly rejects the circuit courts' interpretation of Rule 35(b). An assessment of the strength of this argument requires an understanding of the context in which the statement in question was made.

**8.** At common law, trial courts exercised jurisdiction only over those motions to reduce sentence which were filed within the same term of court as that in which the sentencing had taken place, *see, e.g., United States v. Mayer,* 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129 (1914). The flaw in that approach was that the period of time available to defendants for preparation and filing of their motions was determined wholly by chance. Defendants sentenced early in the term had plenty of time; those sentenced late had just a few scant days to present their cases for mitigation of punishment, *see Mendoza,* 565 F.2d at 1290; *Stollings,* 516 F.2d at 1289.

The reign of fortuity ended with adoption of Rule 35 in 1946. The Rule substituted a period of fixed duration for the term-of-court limitation, in harmony with the concurrent abolition of the common-law rule "as to all proceedings now governed by the term of court as a limitation," Fed.R.Crim.P. 35 advisory committee note, 18 U.S.C. Concededly, the Rule's designation of the fixed period as a limitation on which the sentencing court may act may have

been in fact an expansion of existing restrictions on trial court jurisdiction, *see Mendoza,* 565 F.2d at 1290, 1292 n. 5, 1294. It appears that under the common law, the term-of-court rule limited only the filing—not the *decisional* —period applicable to motions for reduction of sentence. Trial courts seem to have retained power to decide such motions for some period of time, so long as the motions were filed prior to the expiration of the governing term. *See United States v. Pile,* 130 U.S. 280, 9 S.Ct. 523, 524, 32 L.Ed. 904 (1889); *Hume v. Bowie,* 148 U.S. 245, 13 S.Ct. 582, 584, 37 L.Ed. 438 (1893); *Mayer,* 35 S.Ct. at 19. But the question of trial courts' continuing jurisdiction over timely-filed motions need not be resolved by parsing the Rule's uncertain antecedents. *Mendoza,* 565 F.2d at 1292 n. 5. Subsequent considerations of the Rule's provisions have ascribed a sound purpose to its restriction of the decisional period, at least in certain circumstances, *see post* at 1037–1038. Appreciation of the interests the Rule serves lays the appropriate foundation for its doctrinal elaboration.

The issue in *Addonizio* was whether a federal prisoner could collaterally attack his sentence on the ground that post-sentencing changes in the policies of the United States Parole Commission had prolonged his actual imprisonment beyond the period intended by the sentencing judge. The Supreme Court at the outset specifically limited its consideration to whether that type of allegation could support an invocation of the sentencing court's collateral review jurisdiction as defined by 28 U.S.C. § 2255. After a review of the potential bases for section 2255 jurisdiction, the Court concluded that a claim that the sentencing judge erred in his assumptions about the future course of parole proceedings satisfied none of the established standards for collateral attack. It then shifted its focus to whether there existed reason for expanding the grounds of collateral attack to include claims based on frustration of the subjective intentions of the sentencing judge. A review of the statutory scheme governing decisions as to when a lawfully sentenced defendant shall actually be released convinced the Court that such an expansion would be unwarranted. The Court found that the Congress had entrusted release determinations to the discretion of the Parole Commission, limiting the trial court's say in the matter only to selection of the initial date on which the defendant will be considered for parole; by way of reinforcing its conclusion, it observed that Rules 35 and 45(b) narrowly circumscribe the trial court's power to modify a sentence once imposed.

The Court's brief discussion of Rule 35 did not include consideration of whether the decisional period set by that Rule should under any circumstances be extended. The question was not presented expressly; neither was it an ineluctable concomitant to resolution of the single matter presented in *Addonizio*.[9] *Accord, United States v. DeMier,* 671 F.2d 1200, 1205–07 (8th Cir.1982). The statement was dictum, and the Court

has repeatedly cautioned that it "does not decide important questions of law by cursory dicta inserted in unrelated cases." *In re Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 1364, 20 L.Ed.2d 312 (1968); *NLRB v. Hendricks County,* 454 U.S. 170, 102 S.Ct. 216, 227, 70 L.Ed.2d 323 (1981); *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 1662, 32 L.Ed.2d 212 (1972). We therefore conclude that *Addonizio*'s language has not overruled this Circuit's settled law.

But neither is *Addonizio*'s allusion to Rule 35 completely devoid of significance in an assessment of the continuing vitality of *Mendoza*'s rule. The context of the reference, *see Dillon v. State of Montana,* 634 F.2d 463, 465 (9th Cir.1980), emphasizes that the power granted by the Rule is not to be used to usurp the authority of the Parole Commission. *Addonizio,* 99 S.Ct. at 2242–43; *accord, Affronti v. United States,* 350 U.S. 79, 76 S.Ct. 171, 173–74, 100 L.Ed. 62 (1955). That articulation of a constraint on appropriate uses of post-sentencing motions to reduce punishment stated an important corollary to *Mendoza*'s rule. But *Addonizio* by no means stated this corollary for the first time. That the Rule works to protect the legitimate domain of the Parole Commission was recognized in *Mendoza* and its sister decisions. The leading cases in the area observed that one purpose of the Rule's time limitation is to "assure that the district court's power to reduce a sentence will not be misused as a substitute for the consideration for parole by the Parole Board," *Stollings,* 516 F.2d at 1289, by "hold[ing] a timely motion for reduction of sentence in abeyance for months or years and then seek to grant it on the basis of the defendant's conduct in prison," *Mendoza,* 565 F.2d at 1290. Subsequent decisions have accorded this consideration its due. Attempts by district courts to use the latitude sanctioned by expansive readings of Rule 35 to intervene in parole decisions

---

**9.** Nor did *United States v. Robinson,* 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960) cited by the *Addonizio* Court in support of its statement about Rule 35, deal with the issue before us. *Robinson* held that late-filed notices of appeal

are not adequate to confer appellate jurisdiction. Neither Rule 35 nor *Mendoza*'s subsequently developed gloss on that rule were implicated in that case.

have been firmly rebuffed. *In re the United States*, 588 F.2d 56, 60–61 (4th Cir.1978), *cert. denied sub nom. Cole v. United States*, 441 U.S. 909, 99 S.Ct. 2004, 60 L.Ed.2d 380 (1979); *United States District Court*, 509 F.2d at 1356; *accord, United States v. Pollack*, 655 F.2d 243, 244, 246 (D.C.Cir.1980).

In short, we think that broadly reading *Addonizio*'s dictum to toss over *Mendoza's* rule would be unwarranted.[10] Our decision is predicated in part on an appreciation of the unanimity which the principle articulated in *Mendoza* has commanded, both among the members of this Court and among its sister circuits. But more fundamentally, and in the final analysis, it rests on the conclusion that the point the Supreme Court was making in *Addonizio* is consistent with *Mendoza*'s principle as it has been explained and applied. We decline the Government's invitation to retreat from it.

### III.

■ The critical question, then, is whether under the circumstances of this case the district court was justified in delaying action on Krohn's timely-filed motion for reduction of his sentence. We believe that it was.

Our initial inquiry in cases presenting this problem is whether the delay was attributable to factors beyond the defendant's control, making attribution of the consequences of the delay to him unjust. *Mendoza*, 565 F.2d at 1289–90; *Williams*, 573 F.2d at 527, 529; *Stollings*, 516 F.2d at 1288–89; *DeMier*, 671 F.2d at 1200, 1207; *Inendino*, 655 F.2d at 110. The delay was caused by the district court's decision that justice

would best be served by contemporaneous consideration of the several codefendants' challenges to their sentences. Its choice of this approach to the matter put all vestiges of control over the timing of its decision well beyond Krohn's reach.

The next question is whether, in light of the explanation given for the delay, the length of time for which the motion was pending was unreasonable. Krohn's Rule 35 motion was followed in rapid succession by similar motions from co-defendants Gantt, Magee, and Kimes. The Government's response to Krohn's motion was filed in reasonably short order—but the last of its answers to his co-defendants' motions was filed two months after Krohn's motion was made. Filings on the four motions were completed and the matters had been pending before the district court just one month, *see DeMier*, 671 F.2d at 1207, when co-defendant McDonald filed his section 2255 attack on his sentence. McDonald's section 2255 petition bore some substantive significance with respect at least to Krohn's sentence: several of the legal grounds asserted in support of that petition were bottomed on allegations that he had received ineffective assistance of counsel, and Krohn had been represented by the same attorney, *compare United States v. Ursini*, 296 F.Supp. 1152, 1153 n. 1 (D.Conn.1968). Proceedings on McDonald's petition consumed four and a half months. Simultaneous decision of all five matters was rendered about two months later.

This is not a case of lengthy, unexplained delays, *contra Pollack*, 655 F.2d at 246;

---

**10.** Our conclusion accords with that reached by other circuits in post-*Addonizio* consideration of the Rule 35 question. The Eighth Circuit has, on extended consideration of *Addonizio*, also concluded that its statement is dictum, and as such does not require abandonment of that Court's established, liberal interpretation of Rule 35. *DeMier*, 671 F.2d at 1205–07. The Ninth Circuit, though not expressly considering the *Addonizio* question, has labeled its statement as dictum as well, and reaffirmed its adherence to *Mendoza*'s rule. *United States v. Smith*, 650 F.2d 206, 208–09 (9th Cir.1981). The District of Columbia Circuit, which had not previously taken a position on the question,

declined to decide whether *Addonizio* required rejection of the position earlier taken by the other courts of appeals. Instead, it rested its reversal of a sentence reduction order on a determination that the district court had not, under the circumstances, acted within a reasonable period of time. *Pollack*, 655 F.2d at 246. The remaining federal appellate decisions which have alluded to the issue have done so in dicta; uniformly, they have indicated that *Mendoza*'s rule survived. *United States v. Rice*, 671 F.2d 455, 459 (11th Cir.1982); *United States v. Counter*, 661 F.2d 374, 376 (5th Cir. 1981); *United States v. Inendino*, 655 F.2d 108, 109–10 (7th Cir.1981).

*Smith,* 650 F.2d at 209; *In re: United States,* 588 F.2d at 60–61. Nor do the periods during which the matters were under submission and ready for decision compare unfavorably with similar periods found acceptable in comparable cases, *see DeMier,* 671 F.2d at 1207; *Williams,* 573 F.2d at 528; *Janiec,* 505 F.2d at 986; *Ursini,* 296 F.Supp. at 1153. We agree with the district court that it acted on the combined proceedings with reasonable dispatch.

Our final inquiry is into whether the district court in delaying action on the motion deliberately or effectively intervened in matters committed to the authority of the Parole Commission. The record clearly discloses that it did not. Its decision to reduce Krohn's sentence was predicated on a review of the several defendants' criminal activities, and a reappraisal of Krohn's comparative culpability, *ante* at 1035. The classic function of motions for reduction of sentence is "simply to allow the district court to decide if, on further reflection, the original sentence now seems unduly harsh," *United States v. Maynard,* 485 F.2d 247, 248 (9th Cir.1973). The district court's reconsideration of Krohn's punishment in light of the degree of his criminal involvement accords squarely with this purpose.

## IV.

We conclude that the district court had jurisdiction to rule on Krohn's request for a reduction of his sentence. Its order is affirmed.

AFFIRMED.