UNITED STATES, Appellant,

v.

Abdul HAMID a/k/a Hilvan Jude
Finch, Appellee.

No. 81–1294.

District of Columbia Court of Appeals.

Argued Oct. 5, 1982.

Decided June 2, 1983.

William J. Birney, Asst. U.S. Atty., Washington, D.C. with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, and Michael W. Farrell, and Paul L. Knight, Asst. U.S. Attys., Washington, D.C., were on brief, for appellant.

Timothy D. Junkin, with whom Greta C. Van Susteren, Washington, D.C., was on brief, for appellee.

Before NEBEKER, FERREN and PRYOR, Associate Judges.

NEBEKER, Associate Judge:

The government appeals a reduction of sentence entered after a finding of Sixth Amendment ineffectiveness of counsel in filing the motion two days before the expiration of the time specified in Rule 35. We hold that the trial court's action was based on an erroneous premise and is otherwise unsupported. We reverse.

Abdul Hamid, also known as Hilvan Jude Finch was charged and convicted of multiple offenses stemming from his involvement in the March 1977 "Hanafi" takeover of the B'nai B'rith Headquarters. His sentence of 36 to 108 years was affirmed by this court in *Khaalis v. United States*, 408 A.2d 313 (D.C.1979), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980). A motion for reduction of sentence under Super.Ct.Crim.R. 35[1] was filed 118 days after the trial court received the mandate affirming his conviction. The trial court granted this motion over six months later. In *United States v. Nunzio*, 430 A.2d 1372 (D.C.1981), we reinstated Hamid's original sentence after holding that the 120-day time limit embodied in Rule 35 was jurisdictional, and, therefore, the trial court was without authority to grant Hamid's motion for reduction of sentence once that time period had expired. Hamid, through new court-appointed counsel, then filed a motion to vacate sentence under D.C.Code § 23–110 (1981) asserting that his previous counsel had rendered constitutionally ineffective assistance by filing his Rule 35 motion too late for the trial court to rule within the 120-day limit, and that this ineffectiveness denied him his opportunity to have his Rule 35 motion considered and thus deprived him

of due process of law. The trial court granted this motion, concluding that the filing of the Rule 35 motion on the 118th day was "per se" ineffective assistance of counsel. The trial court then reduced Hamid's sentence to time served.

 We hold that the Sixth Amendment right to the effective assistance of counsel does not apply to the post-conviction process in seeking a reduction of sentence. Having no constitutional right to counsel, Hamid could not be deprived of effective assistance of counsel in the filing of his Rule 35 motion. Additionally, Hamid was not deprived of due process of law.

The right to request a reduction in sentence is not a right of sufficient substance to trigger the Sixth Amendment. *Burrell v. United States*, 332 A.2d 344 (D.C.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975). *See Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 34 (1974) (a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or applications for Supreme Court review). Rather, a Rule 35 reduction motion is simply a plea for leniency addressed to the trial court's discretion. *Walden v. United States*, 366 A.2d 1075, 1077 (D.C.1976); *Burrell v. United States, supra*, 332 A.2d at 346. Having no constitutional right to counsel for these purposes, the inquiry and determination as to his effectiveness was an irrelevancy and thus was an improper predicate for any relief. *Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 1301, 71 L.Ed.2d 475 (1982).[2]

Our concurring brother says due process requires counsel and, once required, his per-

---

1. Super.Ct.Crim.R. 35 provides in pertinent part:

 (b) REDUCTION OF SENTENCE. The Court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the Court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction.

2. Given the jurisdictional phrasing of FED.R. CRIM.P. 35 since its original adoption and the not surprisingly flat statement of the Supreme Court in 1979 in *United States v. Addonizio*, 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805, that the time period "may not be extended" it is bootless for the concurrence to take on our *Nunzio* decision as containing inaccurate dicta. This court in *Nunzio* followed *Addonizio* and did not violate our rule of precedent announced in *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971).

formance should be measured by Sixth Amendment standards of effectiveness. The cases he cites involve a criminal trial, appeal of right, revocation of liberty or child custody, and prisoner challenge to a conviction or confinement. None carry their persuasiveness or logic into the post-trial or post-appeal process respecting the reduction of sentence by grace. The dictum in *Burrell v. United States, supra,* to which our brother clings seems particularly sapped of vigor given *Ross v. Moffitt, supra* and *Wainwright v. Torna, supra.*

Appellant had no right to counsel in the proceedings aimed at reduction of sentence. The inquiry by the trial court and its holding respecting the adequacy of counsel's performance in those proceedings was legally irrelevant.

*Reversed and remanded with instruction to reinstate the sentence.*

FERREN, Associate Judge, dissenting in part and concurring in the judgment only.

On the facts of this case, appellee Hamid had a right to appointment of counsel as a matter of due process under the Fifth Amendment. Thus, we must reach the merits of his ineffective assistance claim. However, because counsel pursued the Rule 35 motion in accordance with the law of this jurisdiction at the time—treating the 120-day limit as a filing deadline, not as a jurisdictional limit on the trial court's authority to act—he cannot be held constitutionally ineffective. Accordingly, I too, would reverse.

I.

I agree with my colleagues that, given *Wainwright v. Torna,* 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982), appellee had no Sixth Amendment right to assistance of counsel for a Rule 35 motion. That does not end the matter, however, for the Supreme Court repeatedly has held that Fifth Amendment due process requires the appointment of counsel for indigents in a variety of situations beyond the ambit of the Sixth Amendment.

For example, the Court perceived a blanket due process right to counsel in juvenile proceedings when the juvenile is exposed to the possibility of confinement, *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and also announced a categorical due process right to counsel for state criminal appeals given as of right. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Moreover, the Supreme Court has recognized several categories of proceedings where the facts control—where due process may or may not require the appointment of counsel, depending on "the peculiarities of particular cases." *Gagnon v. Scarpelli,* 411 U.S. 778, 789, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973) (right to counsel in probation revocation hearings to be evaluated on a case-by-case basis); *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (right to counsel for indigent parents in custody termination proceedings). In such proceedings, the trial court is to determine whether "fundamental fairness—the touchstone of due process"—requires the appointment of counsel. *Gagnon, supra,* 411 U.S. at 790, 93 S.Ct. at 1763.

Other jurisdictions have recognized that due process may require the appointment of counsel in post-conviction proceedings. For example, in *Dillon v. United States,* 307 F.2d 445, 446–47 (9th Cir.1962), the court held that the Fifth Amendment requires appointment of counsel in a 28 U.S.C. § 2255 proceeding "when the circumstances of a defendant or the difficulties involved in presenting a particular matter are such that a fair and meaningful hearing cannot be had without the aid of counsel." *Accord LaClair v. United States,* 374 F.2d 486, 489 (7th Cir.1967) ("We hold that the law in this circuit is that appointment of counsel for indigents in habeas corpus and section 2255 proceedings rests in the sound discretion of district courts unless denial would result in fundamental unfairness impinging on due process rights"); *see McKeever v. Israel,* 689 F.2d 1315 (7th Cir.1982) (in failing to appoint counsel for indigent prisoner under

federal *in forma pauperis* statute, trial court abused discretion, creating fundamental unfairness impinging on due process rights); *Maclin v. Freake,* 650 F.2d 885 (7th Cir.1981) (per curiam) (same); *Juelich v. United States,* 342 F.2d 29, 32 (5th Cir.1965) (due process may require appointment of counsel in order to ensure "fair and meaningful hearing," quoting *Dillon, supra*); *Commonwealth v. Conceicao,* 388 Mass. 255, 446 N.E.2d 383, 387–88 (1983) ("determination whether a refusal to appoint counsel [for new trial motion] deprives an indigent defendant of meaningful access . . . or results in fundamental unfairness . . . will be resolved on a case-by-case basis").

Apropos of such legal precedent, this court explicitly recognized in *Burrell v. United States,* 332 A.2d 344 (D.C.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975), that although there is, in general, no statutory or constitutional right to counsel for a motion to reduce sentence, an indigent does have such a right in "situations raising the kind of an issue supported by specific factual allegations, wherein fundamental fairness requires the appointment of counsel if standards of due process are to be met." 332 A.2d at 347.[1]

In evaluating whether due process required the trial court to appoint counsel for appellee, we must consider: (1) appellee's interests at stake, (2) the government's interest, and (3) the risk of error in the absence of counsel. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (quoted in *Lassiter, supra,* 452 U.S. at 27, 101 S.Ct. at 2159).

The criminal defendant's interest is in presenting the trial court with information enabling the court to render a just ruling on the motion to reduce sentence. Ordinar-

ily, this interest is slight, because the trial court will have heard evidence in mitigation at the sentencing stage, and the Rule 35 motion is simply a plea that the trial court reconsider that evidence.

The government's interest is in saving the cost of counsel. *Lassiter, supra,* 452 U.S. at 28, 101 S.Ct. at 2160. Ordinarily, this interest also is slight; the defendant's trial counsel will be familiar with the case and will need little time to draft the motion.

Finally, the risk of error if the defendant is not represented by counsel is ordinarily slight as well—again, because the trial court usually will have received mitigating evidence at sentencing.

The present case, however, is not ordinary. At the time the trial court originally imposed sentence, Hamid offered no evidence in mitigation. However, at the hearings on the Rule 35 motion and, later, on the petition under D.C.Code § 23–110 (1981), he asserted that at the time of trial he was under orders from his codefendant, Khaalis, not to present a defense on penalty of death. The trial court credited Hamid's testimony that "certain of his codefendants caused him to fear for his life if he took an active role on his behalf."

In granting the motion to reduce sentence, the court stated that the defendant "did in fact participate in the crime, but the court now believes he did so under severe duress." The court went on to note that "[e]vidence has been presented to the court, and corroborated by his trial counsel, that the defendant surrendered his constitutional rights to actively participate in his own defense at trial and to testify on his own behalf out of a realistic fear for his personal safety."[2] Under these circumstances, the

---

1. I do not understand how *Burrell's* Fifth Amendment analysis is "sapped of vigor," *ante* at 1045, by the two Sixth Amendment cases—one pre-*Burrell*—cited by the majority. *Ante* at 1045.

2. The trial court appointed counsel for Hamid without explaining whether it did so as a matter of discretion or of constitutional law. Ordi-

narily, the determination as to whether due process requires appointment of counsel is to be made in the first instance by the trial court. *Lassiter, supra,* 452 U.S. at 32, 101 S.Ct. at 2162; *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). I read the trial court's Memorandum Order as an implicit holding that, on these facts, Hamid had a due process right to counsel. In any event, a

defendant's interest was substantially heightened and the risk of error considerably increased, for the trial court had not been able to consider mitigating evidence in its initial sentencing. These two factors, in this case, outweigh any governmental interest in holding down costs. I conclude, accordingly, that appellee had a Fifth Amendment right to counsel for his Rule 35 motion.[3]

## II.

Once the right to counsel is established under the Fifth Amendment, there is the question of the proper standard for evaluating ineffectiveness. I see no reason to use a standard different from the one applied under the Sixth Amendment: "gross incompetence of counsel" that "has in effect blotted out the essence of a substantial defense." *Angarano v. United States,* 312 A.2d 295, 298, n. 5 (D.C.1973) (quoting *Bruce v. United States,* 126 U.S.App.D.C. 336, 339–40, 379 F.2d 113, 116–17 (1967)).

Appellee contends, and the trial court held, that his counsel was "per se ineffective" for filing his Rule 35 motion on the 118th day after the mandate issued from this court affirming his conviction.[4] Appellee points to this court's pronouncement in *United States v. Nunzio,* 430 A.2d 1372, 1374 (1981), that "we long have adhered to [the] view" that the 120 day limit in Rule 35 was jurisdictional, and to our observation in *Nunzio* that, by filing the motion on the 118th day, Hamid's counsel made it "virtually impossible for it to have been ruled upon with care within 120 days." *Id.* at 1374, n. 3.

If it were true that we had "long . . . adhered" to the view that the 120-day limit of Rule 35 cut off the trial court's power to act, then I would have no trouble affirming the trial court's finding of *per se* ineffectiveness. The "long . . . adhered" language, however, is plainly wrong.[5] *Nunzio*

---

trial court confronted with the kinds of specific, credible allegations of duress involved here, extending throughout the criminal trial—and not brought to the court's attention at sentencing—would commit reversible error if it were to deny a request for counsel for a motion to reduce sentence.

3. The circumstances here are precisely the kind envisioned by the Supreme Court in *Gagnon, supra,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656, as requiring counsel. In *Gagnon,* the Court stated that counsel is presumptively required in parole or probation revocation hearings when the parolee or probationer has a "timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present." 411 U.S. at 790, 93 S.Ct. at 1763. The Court in *Gagnon* concluded that, although the probationer had admitted to a serious crime while on probation, his subsequent assertions that the confession was false and made under duress required the state to reconsider its refusal to provide counsel. *Id.* at 791, 93 S.Ct. at 1764.

4. Super.Ct.Crim.R. 35(a) CORRECTION OR REDUCTION OF SENTENCE, provides:
 The Court may correct an illegal sentence at any time and may correct a sentence im-

posed in an illegal manner within the time provided herein for the reduction of sentence. The Court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the Court of a mandate issued upon affirmance of the judgment or dismissal of the appeal . . . .

5. As support for this dictum, *Nunzio* cited two earlier cases in which this court had said that the 120-day limit of Rule 35 was jurisdictional and could not be extended. *Brown v. United States,* 411 A.2d 631, 633 (D.C.1980) (per curiam); *McDaniels v. United States,* 385 A.2d 180, 182 (D.C.1978) (per curiam). It was not until *Nunzio,* however, that this court made clear to the lawyers and judges of Superior Court that the "limit" referred to was not a filing limit. In particular, *McDaniels* cited the federal courts' interpretation of the 120-day time period as a filing limit without indicating that this court's interpretation was in any way different. *Brown* appeared to go even further in suggesting that we shared the federal courts' view:
 We have construed the Rule 35 *filing* deadlines strictly, *see McDaniels v. United States,* D.C.App., 385 A.2d 180, 182 (1978) (Rule 35(a) time periods are jurisdictional and may not be enlarged by the court), *as have the federal courts in interpreting the identical Fed.R.Crim.P. 35(a).* 411 A.2d at 633 (citations omitted) (emphasis added).

represented a departure from the prevailing practice in Superior Court—a practice that had met with at least tacit acceptance from this court on more than one occasion. *See McDaniels v. United States,* 385 A.2d 180, 182 n. 3 (1978) (per curiam) (court noted without apparent disapproval that Rule 35 "frequently has been interpreted ... to allow a court to act upon the motion beyond the 120-day period if the defendant filed the motion to reduce within the time period"); *Walden v. United States,* 366 A.2d 1075 (D.C.1976) (because of administrative error, trial court did not consider appellant's Rule 35 motion until more than two years after it had been filed; this court reviewed the trial court's determination on the merits).[6]

Moreover, as ably documented in Judge MACK's dissenting opinion in *Nunzio, supra,* 430 A.2d at 1375, every United States Court of Appeals that had addressed the issue had construed the 120-day limit as a filing dead-line, not as a jurisdictional limit on the court's power to act.[7] Indeed, two years after *Nunzio,* the federal circuit courts of appeal are still construing Rule 35 as a filing deadline. *See* note 6 *supra.*

Consistent with this precedent, appellee's counsel testified at the § 23–110 hearing: "All I know is this, Judge, that when I filed them, I have been successful; successful to having them reduced after a hundred and twenty days...."[8] The government appears to have acted on the same widely accepted belief as the rest of the bar. It took more than four months to reply to appellee's Rule 35 motion, and, the government did not raise the jurisdictional argument in its response. The sole reference to the 120-day limit in the government's response was in a footnote:

> Defendant's motion was filed on June 25, 1980, and accordingly was still within the 120 day time period prescribed in Rule 35.

---

**6.** Actually, this court in *Nunzio* appears to have relied less on our own decisions than on Supreme Court dictum in *United States v. Addonizio,* 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979), stating that the 120-day time period in Rule 35 "is jurisdictional and may not be extended." See *Nunzio, supra,* 430 A.2d at 1374. This reliance was misplaced. In *United States v. Krohn,* 700 F.2d 1033, 1038 (5th Cir.1983), the United States Court of Appeals for the Fifth Circuit expressly reaffirmed, in light of *Addonizio,* its previous interpretation of Rule 35 in *United States v. Mendoza,* 581 F.2d 88, 90 (5th Cir.1978) (en banc) (per curiam), that if the motion is filed within 120 days, "the district court retains jurisdiction for a reasonable time" thereafter. *Krohn, supra,* 700 F.2d at 1035. The *Krohn* court noted that *Addonizio* focused on "the sentencing court's collateral review jurisdiction as defined by 28 U.S.C. § 2255"; that *Addonizio's* dictum "did not include consideration of whether the decisional period set by that Rule should under any circumstances be extended"; that the Supreme Court "has repeatedly cautioned that 'it does not decide important questions of law by cursory dicta inserted in unrelated cases'" (citations omitted); and that four other federal circuits have indicated that their interpretation of the 120-day limit as a filing deadline, with the district court retaining jurisdiction for a reasonable time thereafter, survives *Addonizio. Id.* at 1037–38; *accord United States v. DeMier,* 671 F.2d 1200, 1205–07 (8th Cir.1982); *United States v. Smith,* 650 F.2d 206, 208–09 (9th Cir. 1981); *see United States v. Rice,* 671 F.2d 455, 459, n. 5 (11th Cir.1982); *United States v. Inendino,* 655 F.2d 108, 109–10 (7th Cir.1981).

**7.** *United States v. Johnson,* 634 F.2d 94 (3rd Cir.1980); *United States v. Williams,* 573 F.2d 527 (8th Cir.1978); *United States v. Mendoza,* 581 F.2d 88, 90 (5th Cir.1978) (en banc) (per curiam); *United States v. Stollings,* 516 F.2d 1287 (4th Cir.1975); *Leyvas v. United States,* 371 F.2d 714 (9th Cir.1967).

**8.** When asked by the government at the § 23–110 hearing whether he had a reason for waiting until the 118th day, counsel testified as follows:

> "Yes; in the first place, the gravity of the offenses, I thought in order to be successful, would have to have as much incarceration as possible so that it didn't look as if Judge Nunzio was just smacking him on the wrist .... I was certainly hoping for the great part of the hostage situation that that would be over, because this involved the Moslems and the Americans and that was certainly a situation that existed here. I wanted to let those disciplinary reports die out as much as I could ...."

Under the prevailing Superior Court practice as sanctioned by this court at the time, counsel's approach was sensible, not incompetent.

Without question, the *Nunzio* decision—reflecting a sharp departure from standard practice based on decisions of this court and of the federal courts—effected a change in the law of this jurisdiction. Counsel, therefore, in failing to anticipate *Nunzio*, cannot be charged with "gross incompetence" under *Angarano, supra*, 312 A.2d at 298 n. 5. Accordingly, I agree that the trial court's order must be reversed.