Michael C. STEWART, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10–CO–1310, 10–CO–1311.

District of Columbia Court of Appeals.

Submitted Nov. 22, 2011.

Decided Jan. 19, 2012.

Michael C. Stewart filed a brief pro se.

Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Chrisellen R. Kolb, Carolyn K. Kolben, and Angela Pegram Saffoe, Assistant United States Attorneys, filed a brief for appellee.

Before BLACKBURNE–RIGSBY and OBERLY, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

In this case, which arises from a triple murder as well as the separate shooting and wounding of a woman over a drug debt of twenty-five cents, Michael C. Stewart appeals from an order of the trial court (Hiram E. Puig–Lugo, J.), entered on September 30, 2010, denying Stewart's motion for post-conviction relief. Stewart's motion was based primarily on his contention that his trial counsel was constitutionally ineffective. The only issue raised by Stewart which warrants plenary discussion arises from his claim that shortly after his sentencing on February 22, 1997, he directed his counsel to file a notice of appeal, but that his counsel failed to do so. Stewart asks this court to direct that an evidentiary hearing be held on this issue. The government takes the position that Stewart is entitled to such a hearing.

It is undisputed that as a part of his written plea agreement with the prosecution, Stewart waived his right to appeal "anything other than the legality of the sentence imposed by the court"; that the judge (Hon. Truman R. Morrison III) again so advised him during the plea proceeding; and that Stewart unequivocally stated that he understood. Although Stewart filed two post-plea motions in 1997, one by counsel and one *pro se,* he did not claim in either submission or, indeed, at any time prior to December 7, 2009, that the sentence imposed by Judge Morrison for any of Stewart's offenses was unlawful. Indeed, it is indisputable that the sentence which Stewart received for each offense was not in excess of the punishment authorized by statute, and Stewart has never claimed the contrary, either in the trial court or on appeal. Under these circumstances, and notwithstanding the government's position, we affirm.

I.

In imposing sentence on Stewart, Judge Morrison remarked that "there [was] no other case that I have ever encountered more shocking and serious than this." The facts revealed at the plea proceeding on July 30, 1996 provide ample reason for the judge's assessment.

On July 7, 1993, when he was sixteen years old, Stewart shot Wanda ("Peaches") Davis in the back with a semi-automatic pistol, temporarily paralyzing her and severely wounding her. Indeed, at the time of Stewart's plea three years after he shot her, Ms. Davis was "semi-mobile," and she was able to walk only short distances using a cane.

The subject of the dispute that forever altered Ms. Davis' life was a quarter of a dollar. A few days before the shooting, Ms. Davis had purchased a "dime rock" of cocaine from Stewart on credit, and she had agreed to pay him $20.00 (twice the value of the drugs) by the end of the week. Ms. Davis was, however, unable or unwilling to repay Stewart the full $20.00 when that amount became due. Instead, she gave him only $19.75. This deficit of twenty-five cents led to her crippling injury, a tragedy as senseless as it was shocking.

Two and a half years later, on December 1, 1995, Stewart was once again attempting to collect a drug debt. On this occasion, armed with a loaded pistol, Stewart came to the home of Gregory Dansby, who owed Stewart approximately $80.00 for crack cocaine that Stewart had sold him on credit. Following an evidently unsatisfactory discussion of the debt with Gregory Dansby, Gregory's brother, William Dans-

by, and Gregory's girlfriend, Angela Robinson, Stewart shot and killed all three of these individuals.[1]

In a videotaped statement to the police following his apprehension, Stewart asserted that the shootings were inadvertent. According to Stewart's initial account, the victims had all jumped on top of him, and his handgun fired continuously as he fell to the floor, accidentally killing all three of them.

Following his apprehension, Stewart entered a pre-indictment plea of guilty to one count of first-degree murder while armed, two counts of second-degree murder while armed, and one count of assault with a dangerous weapon (ADW). The government dismissed all other potential charges against Stewart and agreed not to ask that Stewart be sentenced to life imprisonment without parole. The government further agreed that it would not request that any prison term for ADW (in connection with the shooting of Ms. Davis) be served consecutively to the other sentences.[2]

During the course of a thorough and extensive plea proceeding conducted in conformity with Super. Ct.Crim. R. 11, Judge Morrison carefully explained to Stewart, *inter alia*, the elements of each offense to which Stewart was pleading guilty, the applicable maximum and minimum sentences, and the rights that Stew-

art would be giving up by pleading guilty, specifically including "the right to take an appeal about the question whether you did these crimes or not." [3]   On February 5, 1997, Judge Morrison imposed consecutive terms of imprisonment for not less than thirty years to life for armed first-degree murder;  not less than seven and one-half years nor more than life for each count of armed second-degree murder;  and not less than three and one-third years nor more than ten years for ADW.

## II.

On June 6, 1997, Stewart, through counsel, filed a motion for reduction of sentence pursuant to Super. Ct.Crim. R. 35(b), contending primarily that the consecutive sentences for armed second-degree murder and ADW were unnecessarily harsh. Stewart requested the judge to order that these sentences be served concurrently with the mandatory minimum sentence for armed first-degree murder. This motion was essentially a plea for a more lenient sentence, and it contained no claim that the punishment imposed by the court was in excess of the maximum authorized by law;  indeed, Super. Ct.Crim. R. 35(a), which governs the correction of an illegal sentence, was not cited or mentioned at all. The judge denied the motion, concluding that the sentence as imposed was appropriate.[4]

---

1. Gregory Dansby was shot twice in the arm, twice in the leg, and once at close range behind the right ear. William Dansby was shot six times in the chest and once in the arm. Angela Robinson was shot once in the back of the head.

2. Judge Morrison, however, imposed a consecutive sentence for ADW.

3. The plea agreement which Stewart had signed before the Rule 11 proceeding provided that the rights that Stewart was giving up by pleading guilty included "the right to appeal anything other than the legality of the sentence imposed by the court."

4. In January 1997, Stewart wrote a letter to Judge Morrison in which he asked that his guilty plea be set aside on the basis of ineffective assistance of counsel. Treating the letter as a *pro se* motion, the judge denied relief on the ground that Stewart's claims were "vague and conclusory," and also because they were premature since Stewart had not yet been sentenced. At the sentencing hearing, Stewart's attorney advised the court that her client wished to withdraw his motion. Stewart made no claim in his letter that the sentence imposed by the court was in excess of the punishment authorized by law.

On December 7, 2009, almost thirteen years after he was sentenced, Stewart filed the *pro se* "motion for post-conviction relief pursuant to §§ 23–110(b) and 22–4135 of D.C.Code" which is the subject of this appeal. Stewart asserted numerous grounds for the motion, one of which was that "appellant's trial counsel failed to file a notice of appeal." In an affidavit filed in support of his motion, Stewart stated that "I had requested my Trial Counsel Mrs. Renee Raymond to file my Notice of Appeal shortly after the Court imposed Sentence." In opposition to Stewart's motion, the government filed an affidavit by Ms. Raymond[5] in which she stated, in pertinent part:

> While advising Mr. Stewart about the rights he would be giving up by entering a guilty plea I advised him that he would be giving up the right to note an appeal unless Judge Morrison imposed an illegal sentence. Judge Morrison advised Mr. Stewart of this right as well during the plea proceeding.
>
> . . .
>
> If Mr. Stewart had asked me to note an appeal after his sentencing I would have told him that the Judge had explained to him, and that I had explained to him, that he could only appeal from an illegal sentence.

### III.

In denying Stewart's claim that his trial counsel was constitutionally ineffective by allegedly failing to file a notice of appeal, notwithstanding Stewart's request that counsel do so, the motions judge wrote:

> The defendant agreed to waive his right to appeal under the terms of the plea agreement unless the Court imposed an illegal sentence. There is no indication that the sentence imposed here was illegal or that the defendant would have

prevailed had the sentence been appealed. . . . In addition, the lapse of time between the date of the sentencing and the date the motion for post-conviction relief filed here further undercuts the plausibility of this claim.

■■ The question whether a hearing is required for a motion for post-conviction relief pursuant to D.C.Code § 23–110 is addressed to the sound discretion of the trial court. *Harkins v. United States,* 810 A.2d 895, 899 (D.C.2002). In *Dobson v. United States,* 711 A.2d 78, 83 (D.C.1998), this court summarized the applicable legal standard:

> Section 23–110 (c) states:
>
>> Unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the prosecuting authority, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto.
>
> In light of the foregoing provision, there is a presumption that a trial court presented with a § 23–110 motion alleging the ineffective assistance of counsel should conduct a hearing. *Ramsey v. United States,* 569 A.2d 142, 147 (D.C. 1990). In order to uphold the denial of a § 23–110 motion without a hearing, we must be satisfied that "under no circumstances could the petitioner establish facts warranting relief." *Id.* (quoting *Fontaine v. United States,* 411 U.S. 213, 215, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973)). This court has recognized three categories of claims that do not merit a hearing:
>
>> (1) vague and conclusory allegations;
>>
>> (2) palpably incredible claims; and

---

5. At the time she represented Stewart, Ms. Raymond was employed by the Public Defender Service (PDS), and she remains with PDS at the present time.

(3) assertions that would not merit relief even if true.

*Id.*

After considering, in light of the entire record, Stewart's basic contention, namely, that he directed Ms. Raymond to appeal and that she was constitutionally ineffective by failing to do so, we conclude that this claim is without merit and lacks even minimal credibility, and that, considered in their full context, Stewart's assertions would not merit relief even if true.

We note at the outset that Stewart's claim that he asked Ms. Raymond to file an appeal at all is, to say the least, extremely dubious. His assertion that he did so was first made on December 7, 2009, almost thirteen years after he was sentenced. Although he filed two earlier motions relating to his guilty plea or sentence, he made no claim in either of those filings that he had directed Ms. Raymond to appeal and that she had failed to do so. Given Stewart's obvious dissatisfaction with the severe punishment that Judge Morrison had imposed, as well as his active interest in the quality of Ms. Raymond's representation of him (as reflected in the *pro se* motion that he filed in 1997), it taxes credulity to claim that he would have neglected to mention, for more than a dozen years, the purported critical fact that he had been deprived, by his counsel's inaction, of the right to appeal from the judgment. Such a protracted delay is highly material, for the "lapse of time affects the quantum of required proof, *as well as the good faith and credibility of the moving*

*party.*" *Ramsey,* 569 A.2d at 149 (emphasis added) (quoting *United States v. Wiggins,* 184 F.Supp. 673, 676 (D.D.C.1960)); *see also Dobson,* 711 A.2d at 84 (quoting *Ramsey* ).[6]

But even if we assume *arguendo* that Stewart's belated allegation that he directed his attorney to appeal, though implausible, was not "*palpably* incredible," *Dobson,* 711 A.2d at 83, there is no reason to believe that Ms. Raymond failed to do anything that a reasonably competent attorney would have done if her client had given her such a direction. In her affidavit filed with the government's response to Stewart's motion, Ms. Raymond did not specifically deny that Stewart instructed her to appeal. Indeed, after the passage of so many years, it may well have been difficult or impossible for her to remember whether or not he directed that she do so. Ms. Raymond did state in her affidavit, however, that if Stewart had wanted her to file a notice of appeal, she would have advised him that, as both she and Judge Morrison had previously explained to him in connection with the plea, he had given up the right to appeal except from the imposition of an illegal sentence. Even in the absence of a hearing, Ms. Raymond's affidavit must surely be recognized as "palpably credible." Given Stewart's explicit waiver of the right to appeal (except from an illegal sentence), both in the written plea agreement and during the plea colloquy itself, no competent attorney could have given Stewart any advice different from that described by Ms. Raymond in her affidavit.[7] Indeed, in his reply

---

6. We also observed in *Dobson,* 711 A.2d at 84, that in light of a delay comparable to Stewart's here, "it may be difficult for the court to evaluate retrospectively Dobson's claim [of ineffective performance by his trial counsel]," and that "so much time having passed, the case bristles with potential prejudice to the prosecution." In this case, the delay is entirely attributable to the defendant, and it would be patently unfair to the government to

compel it to rely on a busy defense attorney's recollection of conversations with her client that allegedly took place more than a dozen years earlier, or to expect the government to reassemble, in 2012 or later, its evidence of a triple murder that occurred in 1996 or of a shooting that took place in 1993.

7. We note that this court "has refused to exercise [its] jurisdiction to hear a challenge to a guilty plea ... with the objective of

brief, in which he attempted to controvert several of the government's other contentions, Stewart did not deny that Ms. Raymond responded in the manner she described to his alleged direction that she file a notice of appeal.[8] In any event, given the foregoing history and considering the content of both affidavits, the judge could reasonably deem "palpably incredible" the claim that Ms. Raymond's response to any request that she file a notice of appeal was constitutionally deficient.

Moreover, as this court explained in *Dobson*, 711 A.2d at 83, a hearing is not required for "assertions that would not merit relief even if true." As we have noted, Stewart knowingly waived his right to appeal except in relation to a hypothetical illegal sentence, and he has never asserted, nor does he claim now, that any aspect of Judge Morrison's sentence was in excess of that authorized by law.[9] In

---

reducing the great waste of judicial resources required to process frivolous attacks on guilty plea convictions." *Wallace v. United States*, 936 A.2d 757, 763 (D.C.2007) (quoting *Lorimer v. United States*, 425 A.2d 1306, 1309 n. 6 (D.C.1981) (per curiam)) (internal quotation marks and brackets omitted). The government has not contended that *Lorimer* (which, unlike *Wallace*, was decided before Stewart was sentenced) would have precluded Stewart from appealing directly from the sentence, and in any event, Ms. Raymond could have filed a motion on Stewart's behalf to withdraw his guilty plea, thus making it possible for Stewart to appeal if the motion was denied. But in this case, Stewart claims to have directed his attorney to appeal "shortly after sentence." If such a motion had been filed after Stewart was sentenced, it could have been granted, under the provisions of Super. Ct.Crim. R. 32(e), only to correct "manifest injustice," a standard which, on this record, Stewart could not conceivably meet.

8. At page 36 of its brief, the government asserts that "there is a factual dispute about whether [Stewart] requested that his counsel file a notice of appeal," and that, as the prosecutor told the motions judge, "the [c]ourt will need to make a credibility determination." We do not agree with this assessment, for the affidavits of Stewart and Ms. Raymond are not irreconcilable. Assuming *arguendo* that Stewart's representation that he directed Ms. Raymond to appeal is true, Ms. Raymond's affidavit explains what her only plausible response to such a direction could and would have been.

9. In *In re L.J.*, 546 A.2d 429, 434 (D.C.1988), this court stated:

The refusal of the courts of this jurisdiction to review on appeal sentences which are within statutory limits, upon the ground that such sentences are too severe, is of long standing. In *Raymond v. United States*, 26 App.D.C. 250, 257 (1905), *cert. denied*, 200 U.S. 619, 26 S.Ct. 755, 50 L.Ed. 623 (1906), the court put it this way:

The power to affix the penalty upon conviction is vested exclusively in the trial court, and the appellate court is vested with no jurisdiction in respect of the exercise of that power, provided it does not exceed the statutory limit.

More recently, this court has recognized that

"In the act of sentencing, the judge approaches the attribute of the Almighty— he sits in judgment of his fellow man ...." (quoting *Leach v. United States*, 115 U.S.App.D.C. 351, 353, 320 F.2d 670, 672 (1963)).

To sit in judgment of a man while looking him in the eye and knowing him in some way first hand is one thing, but to do so only by way of the dispassionate and remote confines of an appellate record, no matter how elaborately composed, is quite another.

The judgment that this court should not enter the area of reviewing the excessiveness of sentences is one not easily arrived at. Indeed, reasonable men [and women] may and do differ on the subject. However, absent legislative direction that we must undertake such a task, and firm guidance as to applicable standards for such review, we hold we may not do so. *Foster v. United States*, 290 A.2d 176, 178–79 (D.C.1972). *See also Walden v. United States*, ... [366 A.2d 1075, 1076 (D.C. 1976)] wherein this court reemphasized that

our precedents demonstrate the fact that it is not our role to review sentences which are within statutory limits,

366 A.2d at 1076, and that this is true even where "the prisoner presents an affecting

other words, if Stewart directed his attorney to file a notice of appeal, and if she explained to him (correctly) that he had waived the right to appeal except from an illegal sentence and that the sentence was not illegal, there is no conceivable basis for viewing her performance as constitutionally deficient, or deficient at all. Under these circumstances, it is difficult to understand how the hearing that Stewart has requested could possibly inure to his benefit.

In *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), relied on by the government, the Supreme Court held that if a defendant has failed to file a timely notice of appeal, if that failure is the result of ineffectiveness on the part of his counsel, and if there are other substantial grounds to believe that he would have appealed, the defendant need not "specify the points he would raise were his right to appeal reinstated." *Id.* at 486, 120 S.Ct. 1029 (quoting *Rodriquez v. United States,* 395 U.S. 327, 330, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969)). The Court explained that "it is unfair to *require* an indigent, perhaps *pro se,* defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has even reviewed the record in his case in search of potentially meritorious grounds of appeal." *Id.* (emphasis in original). The Court adhered to its prior holdings that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477, 120 S.Ct. 1029 (citing *Rodriquez,* 395 U.S. at 327, 89 S.Ct. 1715 and *Peguero v. United States,* 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999)).

The government's argument based on *Flores–Ortega* gives us pause, but we do not think that it is dispositive in this case,

case for reconsideration of the sentence." *Id.* at 1077.

for the issue here arises in an entirely different context. We stated in *United States v. Alston,* 580 A.2d 587, 594 n. 12 (D.C.1990):

In *Kraft v. Kraft,* 155 A.2d 910 (D.C. 1959), the court pointed out that:

It is well to remember that significance is given to broad and general statements of the law only by comparing the facts from which they arise with those facts to which they supposedly apply.

155 A.2d at 913. *See also Armour & Co. v. Wantock,* 323 U.S. 126, 132–33, 65 S.Ct. 165, 89 L.Ed. 118 (1944), where the Supreme Court aptly stated:

It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the order under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expressions transposed to other facts are often misleading.

*See also Richman Towers Tenants' Ass'n, Inc. v. Richman Towers LLC,* 17 A.3d 590, 598 (D.C.2011); *Khiem v. United States,* 612 A.2d 160, 164 (D.C.1992), *cert. denied,* 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993).

The issue in *Flores–Ortega* was focused on the extent of counsel's affirmative duty to discuss the possibility of appeal with the client. The case did not present a situation such as the one now before us, in which the defendant has not only failed to claim that the sentence was illegal, but has also waited for more than a dozen years after sentencing before raising the claim that his counsel was ineffective by failing

Stewart has not challenged the sentence imposed by Judge Morrison on grounds other than its severity.

to appeal. Moreover, although *Flores–Ortega* also arose out of a guilty plea, there is no mention in the Court's opinion of any express waiver by the defendant of his appellate rights. In this case, given Stewart's unequivocal waiver and the uncontested reality that his sentence was within statutory limits, we do not believe that the Supreme Court's conclusion that an evidentiary hearing was required in *Flores–Ortega* controls the disposition of the issue here. On the contrary, we are of the opinion that viewed in the context of the record as a whole, Stewart's claim of ineffective assistance of counsel in relation to the failure to file a notice of appeal is palpably incredible, and that on this record, Stewart's allegation that he directed his attorney to appeal, even if true, does not entitle him to relief. Accordingly, we discern no reversible error or abuse of discretion on the part of the motions judge.

### IV.

In spite of our conclusion that the motions judge did not err, this appeal is rendered more complicated by the government's concession that there was trial court error requiring a remand. We are therefore called upon to decide whether, in light of the government's position, we should reverse the judge's ruling and remand the case for a hearing, notwithstanding our view that the judge exercised his discretion appropriately and in conformity with the law.

There can be no doubt that this court has the authority to affirm the motions judge's decision in spite of the government's concession. "[A]s this court put it long ago, we cannot set aside the conviction [10] on confession of error alone, [for]

the public interest prevents shifting the responsibility for reversal from the appellate court to the prosecuting official." *Rose v. United States*, 629 A.2d 526, 533 (D.C.1993) (quoting *Fletcher v. United States*, 49 A.2d 88, 88 (D.C.1946)) (additional citations and internal quotation marks omitted).[11] The court in *Rose* went on to explain that "[i]n such a case, this court will decide the appeal based on our independent review of the merits after a thorough examination of the record." *Id.* (citations and internal quotation marks omitted).

The decisions in *Young, see supra* note 11, *Fletcher* and *Rose* do not mean, however, that we should accord the government's position no weight. On the contrary, it has been this court's "general practice" to accept the government's concession, especially where the government "appears to have deliberately conceded [the] issue as a matter of appellate strategy, rather than merely failing to argue the point inadvertently." *Ellis v. United States*, 941 A.2d 1042, 1048 (D.C.2008) (quoting *Rose*, 629 A.2d at 536) (internal quotation marks omitted). "[P]oints not urged on appeal are deemed to be waived," *Rose*, 629 A.2d at 535 (footnote omitted), and this principle, which is applicable to the government as well as to the defense, *id.*, has even greater force when the government, rather than urging affirmance of the trial court's ruling, argues that the ruling was wrong.

In this case, the issue as to the weight to be accorded to the government's concession is not an easy one, and respectable arguments can be made for and against deciding the appeal in conformity with the government's view of the issue. Neverthe-

---

10. In this case, the appeal is from an order denying post-conviction relief rather than from the original conviction, but we discern no reason to apply a different standard.

11. The court in *Fletcher* relied, in turn, on the Supreme Court's landmark decision in *Young v. United States*, 315 U.S. 257, 62 S.Ct. 510, 86 L.Ed. 832 (1942).

less, on balance, we are not prepared to reverse the motions judge's decision, which we believe to be fundamentally correct, on the basis of a government concession which, in our view, rests on a mistaken analysis of the issue before us. For the reasons previously stated, we do not believe that the present appeal is controlled by *Flores–Ortega,* and we do not think that the record reflects any deficient performance on the part of trial counsel in relation to a possible appeal.

Finally, and assuming *arguendo* that, in light of the government's position, the issue as to whether a remand is appropriate is a close one, there are pragmatic considerations favoring affirmance. In general, the law does not require the doing of a futile act. *See, e.g., In re Melton,* 597 A.2d 892, 908 (D.C.1991) (en banc). To remand a case where, as here, there is no appreciable possibility that a further hearing in the trial court would affect the ultimate outcome, is unnecessary and incompatible with " '[g]ood judicial husbandry.' " *Id.* (quoting *United States v. Dogan,* 314 F.2d 767, 772 (5th Cir.1963)). In this case, we are satisfied that a remand would serve no useful purpose, for the record before us reveals that the result of any hearing following the remand would effectively be pre-ordained.

In order to prevail at such a hearing, Stewart would first have to persuade the judge that in 1997 he directed his attorney to appeal, and that she failed to do so. To make this showing would not be easy, for Stewart did not include such an allegation in either of the prior motions that he filed soon after the plea. Moreover, he first made this claim more than a dozen years after being sentenced. His credibility would also be subject to grave doubt in light of his record as a triple murderer, the absurd and fabricated account of the slayings that he provided to the police in his initial videotaped statement, and the infer-

ence that would necessarily be drawn against him as a result of his protracted delay in asserting this claim and the prejudice to the government caused thereby. As we emphasized in *Dobson,* 711 A.2d at 84, "it is the party responsible for the delay that must be chargeable with the consequences."

Assuming, *arguendo,* that Stewart could persuade the judge, notwithstanding these difficulties, that he directed his attorney to appeal, he would next have to show that counsel's response to this direction was constitutionally deficient. Ms. Raymond would evidently testify, in accordance with her affidavit, that if Stewart had in fact directed her to appeal, then she would again have explained to him that, as both she and Judge Morrison had previously advised him, he had waived his appellate rights unless the sentencing exceeded that authorized by statute, which it did not. It is improbable, to say the least, that the judge would disbelieve Ms. Raymond's testimony as to how she would have responded to a direction to appeal, for under such circumstances, *any* reasonably competent attorney would have provided the same information to Stewart. The prospect that the court would find Ms. Raymond's performance to be constitutionally deficient is therefore altogether implausible.

Finally, in order to overcome his waiver of the right to appeal, Stewart would be required to demonstrate that his sentence was in excess of that authorized by law. He has asserted no such claim to date, and it is undisputed (and indisputable) that Stewart's sentence was within the statutory limits that were explained to him during the plea colloquy.

In sum, we are unable to discern how the hearing, which Stewart is requesting and to which the government agrees that he is entitled, would benefit him. The chances that he would prevail are, in our

view, close to nil. This is not to suggest that process does not matter, or that, *e.g.*, a defendant is not entitled to a jury trial simply because the evidence against him is deemed to be overwhelming. To follow such a suggestion would be to nullify a precious constitutional right. A court may not dispense with fundamental procedural protections simply because the defendant is likely to lose the case anyway. But on the record here, Stewart's claimed right to a hearing, even though supported by the government, is dubious at best, and his delay in asserting his claim, as well as his minimal (or worse) prospects of success on the merits, provide common-sense support for sustaining the order on appeal.

*Affirmed.*[12]

---

12. In addition to his claim that his trial counsel was constitutionally ineffective by not filing a notice of appeal, Stewart has enumerated in his motion a litany of additional complaints about her representation of him and about Judge Morrison's conduct of the plea proceeding. Substantially for the reasons stated by Judge Puig–Lugo in his order denying Stewart's motion and in the government's response in its brief to Stewart's complaints, we conclude that Stewart has not shown reversible error or abuse of discretion on the part of the motions judge, and that his motion was properly denied.