v.

UNITED STATES, Appellee.

No. 10–CO–89.

District of Columbia Court of Appeals.

Argued Jan. 5, 2012.
Decided Feb. 16, 2012.

Mikel–Meredith Weidman, Public Defender Service, with whom James Klein and Jaclyn Frankfurt, Public Defender Service, were on the brief, for appellant.

Kristina L. Ament, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Assistant United States Attorney, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY and OBERLY, Associate Judges, and SCHWELB, Senior Judge.

and gives incorrect statutory citations for several offenses.

* In light of the nature of this case and the possibility that the appellant's arrest records will ultimately be sealed, we refer to the appellant by her initials only.

SCHWELB, Senior Judge:

V.C.B. appeals from an order of the trial court, entered on December 30, 2009 (Order No. 1) and supplemented on September 28, 2010 (Order No. 2), denying her request, articulated in her "initial" motion and supplemented in her "renewed" motion, that all records of her arrest on August 1, 2008, for attempted cruelty to children and simple assault be sealed pursuant to D.C.Code § 16–802 (2007 Supp.). In Order No. 1, without holding an evidentiary hearing, the trial judge determined that "the record conclusively establishes that defendant has failed to prove, by a preponderance of the evidence, that she did not commit the offense for which she was arrested or that the crime did not occur." In issuing Order No. 1, the judge considered only the allegations in Ms. B.'s initial motion, but he was apparently unaware of, and did not decide the claims in, her renewed motion. In Order No. 2, the judge directed that the renewed motion be certified to this court as a supplemental record, but he stated that the renewed motion had not been "considered by this [c]ourt."

On appeal, adhering to the claim of actual innocence on which her motion to seal was based, Ms. B. contends that she is entitled as a matter of law to an order sealing her arrest records, and she requests that this court so direct without further contested proceedings in the trial court. In the alternative, Ms. B. asks that we remand the case to the trial court with directions to decide the motion on the basis of the entire record, including her renewed motion and certain exculpatory materials submitted therewith. The government agrees that Ms. B. is entitled to a remand, but urges the court to deny Ms. B.'s request for an order directing that the records be sealed.

We conclude that the trial judge erred by not considering, on their merits, the materials submitted by Ms. B. in conjunction with her renewed motion. We agree with the government, however, that the trial court is the appropriate forum for determination of the relevant facts. Accordingly, we reverse the order appealed from, and we remand the case to the trial court for the entry of appropriate findings of fact and conclusions of law based on consideration of the entire record.

Because the judge did not consider, and was apparently unaware of, Ms. B.'s renewed motion, which was filed on September 9, 2009,[1] or the exculpatory materials submitted with that motion, the opportunity for relief to which Ms. B. may well prove to be entitled has been unacceptably delayed. Accordingly, the proceedings on remand shall be conducted and concluded as promptly as possible.

## I.

This case has an unusual and somewhat confusing procedural history, which is marked by substantial and unexplained delays. On August 2, 2008, following Ms. B.'s arrest on the previous day, the United States filed a criminal information charging her with one count each of second-degree attempted cruelty to children and simple assault. The alleged victim of these offenses was Ms. B.'s thirteen-year-old brother, B.S.; Ms. B. was the guardian of B.S. and of his half-brother, J.H., who was a witness to the incident in question. The substance of the government's case against Ms. B. was that she allegedly

---

1. As previously noted, Order No. 1 was issued more than three months *after* the filing of the renewed motion.

"choked" B.S. because he tried to chew gum when she had forbidden him to do so.

Shortly after Ms. B.'s arrest, the District of Columbia instituted child neglect proceedings against her, and B.S. and J.H., as well as Ms. B.'s two young biological children, were removed from her home. On November 25, 2008, an evidentiary hearing was held in the child neglect case before a magistrate judge of the Superior Court. Ms. B.'s counsel in the criminal case, Stephen H. Cooper, Esquire of the Public Defender Service (PDS), attended the child neglect hearing, and he heard the testimony of B.S. and J.H. According to Mr. Cooper, both boys testified that Ms. B. did not choke B.S. On December 1, 2008, six days after the hearing in the neglect proceedings, Mr. Cooper filed a motion in the criminal case requesting permission to order a transcript of the neglect hearing. The trial judge, however, has apparently never ruled on that motion, and the transcript is not a part of the record on appeal.

On December 9, 2008, the scheduled trial date of the criminal case, the government entered a *nolle prosequi* dismissing both charges against Ms. B. Ms. B. claims, and the government has not denied, that its decision to dismiss the criminal case was made after the prosecutor interviewed B.S. and J.H. and determined that they would adhere to testimony they gave at the neglect hearing, which is said to have contradicted the charge that Ms. B. choked B.S.

On February 24, 2009, Ms. B. filed her initial motion to seal all records relating to her arrest. In her motion, signed by Mr. Cooper, Ms. B. alleged in pertinent part:

> If this Court finds by clear and convincing evidence [2] that "the offense for which the movant was arrested did not occur or that the movant did not commit the offense," this Court should seal the movant, Ms. [B.'s] arrest records. *See* Super. Ct.Crim. R. 118(e).

> In this case, there is clear and convincing evidence that the movant did not commit the offense because both B.S. and J.H. made numerous statements to the United States Attorney's Office, etc., as well as testified under oath (in separate legal proceedings) that [Ms. B.] *never* choked or otherwise assaulted B.S. or any other person. The government possesses no additional information that [Ms. B.] has ever assaulted her brother or anyone else.

Ms. B. submitted no documentation or sworn testimony with this motion.

For some reason not apparent from the record, the government did not file its opposition to the initial motion until September 3, 2009, more than six months after that motion was filed. Essentially relying on a police report of Ms. B.'s arrest, the government asserted that the "defendant has not met her burden of proof by a preponderance of the evidence that she did not commit the crime for which she was arrested," and requested that Ms. B.'s motion be "summarily denied."

On September 9, 2009, Mr. Cooper filed a renewed motion on behalf of Ms. B. in which he alleged, *inter alia:*

> On the morning of December 9, 2009, shortly before the trial call in this case before Your Honor, undersigned counsel approached the assigned Assistant United States Attorney (AUSA) on the case, Lindsay Suttenberg, and informed Ms. Suttenberg about B.S. and J.H.'s [3] recent testimony at the neglect proceed-

---

2. The correct standard of proof is by a preponderance of the evidence.

3. Mr. Cooper represented that, according to J.H., Ms. B. did "smack" B.S., but she did not hurt him.

ings before Magistrate Judge Smith. AUSA Suttenberg then took B.S. and J.H. into a witness room adjoining the courtroom. When AUSA Suttenberg emerged after having talked to B.S. and J.H., she told the undersigned that B.S. and J.H. had just repeated to her the sum and substance of their respective testimonies at the neglect proceeding concerning the alleged choking incident, and the fact that it never occurred, and as a result, the government would dismiss the case against Ms. [B.].

Attached to the renewed motion were handwritten statements signed by B.S. and J.H.[4]

The government did not file a response to Ms. B.'s renewed motion. On December 30, 2009, in Order No. 1, the trial judge summarily denied Ms. B.'s initial motion without mentioning or considering her renewed motion, which apparently had not been docketed. Notwithstanding the exculpatory material submitted with the renewed motion, the judge held that the record "conclusively establishes" that Ms. B. had failed to prove by a preponderance of the evidence that she had not committed the charged crimes. Almost nine months later, on September 28, 2010, in Order No. 2, the trial judge ordered that the renewed motion be "certified to the Court of Appeals . . . as a supplemental record."

## II.

In order to be entitled to an order directing that her arrest records be sealed, Ms. B. was required to show by a preponderance of the evidence that the offense for which she was arrested did not occur, or that she did not commit the offense. D.C.Code § 16–802(b) and (c). In the present context, she must demonstrate that the exculpatory accounts allegedly provided by B.S. and J.H. are more likely to be true than the complainant's original accusation, for the record contains at least two quite different versions of the May 25, 2008 incident involving Ms. B. and B.S.

In its opposition to Ms. [B.]'s initial motion to seal, the government described as follows the circumstances that led to Ms. B.'s arrest:

[T]he records in this case demonstrate that on May 28, 2008, members of the Metropolitan Police responded to a radio run to 2102 Savannah Terrace, Southeast, Apartment K, in Washington, D.C., for a woman threatening to kill herself. Upon arrival on the scene, officers encountered the defendant holding a child and a Bible, shouting in a loud voice, and threatening to kill anyone who tried to take her baby or hurt her family. The defendant was subdued and transported to Greater Southeast Hospital for mental health treatment.

On July 2, 2008, during an interview at the Children's Advocacy Center, in Washington, D.C., the complainant reported that, on May 25, 2008, the defendant choked him when he was trying to get a piece of chewing gum. On July 27, 2008, the complainant positively identified the defendant as the person who choked him. On August 1, 2008, the defendant was placed under arrest and transported to the Seventh District for processing.

In her renewed motion, Ms. B. alleged, through counsel, that B.S. and J.H. had both testified under oath at the neglect hearing that Ms. B. did not choke B.S., and that the prosecutor had dismissed the criminal case after interviewing the two boys. Attached to the motion was a signed handwritten statement by B.S. in which B.S. related that, on the day in question, Ms. B. had told him not to chew any gum before dinner, but that she

---

4. These statements are discussed in more detail in Part II, *infra.*

saw me chewing the gum and got upset because she told me not to. I was being disrespectful and chewing the gum. Because I was being disrespectful and chewing gum, my sister came over and grabbed my shoulders and pulled me. I snatched away—pushed my sister away. My sister then left the room and told me to spit the gum out. I was not hurt at all during this incident. I was not scared at all during this incident. That's all I have to say about this incident.

Although this statement was prepared and signed in the presence of defense counsel and a PDS investigator, B.S. did not explicitly deny the allegation that Ms. B. had choked him.

Also attached to the renewed motion was a handwritten statement signed by J.H. in which he asserted, *inter alia*, that:

I saw [Ms. B.] come over and grab [B.S.]'s shoulders and say to him that she told [B.S.] not to have any gum.... I saw my brother push [Ms. B.] away because she was holding him with both hands by her shoulders. [My sister] was definitely not choking [my brother] at any time.

J.H. added that his brother "had an attitude," but that he did not cry or appear to be in pain. J.H. did not mention, in his handwritten statement, that Ms. B. had smacked B.S.

### III.

Ms. B. contends, and the government concedes, that the trial judge erred by denying Ms. B.'s motion to seal without a hearing. We agree.

■ In support of her motion, Ms. B. has alleged, and the government does not

deny, that her counsel attended the neglect hearing and that, at that hearing, B.S. and J.H. both testified, under oath, that Ms. B. did not choke B.S. In addition, Ms. B. represents, and the government does not deny, that after interviewing the two boys, the prosecutor decided to dismiss the case. Ms. B. has also filed signed (though unsworn) statements by B.S. and J.H. which are, in some measure, exculpatory. Although the determination whether to hold an evidentiary hearing on a motion to seal is confided to the trial court's discretion, *White v. United States*, 582 A.2d 1199, 1201 (D.C.1990), we are satisfied that the proffer that B.S. and J.H. both testified under oath that the alleged choking did not occur was sufficient to preclude the denial of the motion without a hearing. *Id.* at 1201; *Mahaise v. United States*, 722 A.2d 29, 29–30 (D.C.1998). Although Ms. B.'s case would be stronger if she had been able to provide a transcript of the boys' allegedly exculpatory testimony at the neglect hearing, she was precluded from doing so by the trial judge's failure to rule on her motion for a transcript of that hearing. Moreover, it is our "general practice" [5] to accept a concession by the government that the trial court committed error, "especially where, as here, the government appears to have deliberately conceded [the] issue as a matter of appellate strategy, rather than merely failing to argue the point inadvertently." *Ellis v. United States*, 941 A.2d 1042, 1048 (D.C.2008) (quoting *Rose v. United States*, 629 A.2d 526, 536 (D.C.1993)) (internal quotation marks omitted).

### IV.

■ Ms. B. contends, as we have seen, that she is entitled to an order sealing her

5. This general practice is not, however, universal. *See, e.g., Stewart v. United States*, 37

A.3d 870, 2012 WL 140426 (D.C.2012).

arrest records as a matter of law. It is her position, in effect, that there is no reason to hold an evidentiary hearing. We do not agree.

▮▮ In ruling on a motion to seal a defendant's arrest records pursuant to D.C.Code § 16–802(c), the court must determine whether a defendant's claim that he or she is innocent, or that no crime has been committed, is supported by a preponderance of the evidence. This determination constitutes a finding of fact. *District of Columbia v. Davis,* 811 A.2d 800, 802 (D.C.2002); *Burns v. United States,* 880 A.2d 258, 260–61 (D.C.2005). "It is incumbent upon us, in this case as in any other, to eschew appellate fact-finding," *Brown v. United States,* 590 A.2d 1008, 1020 (D.C. 1991), and to avoid usurping the function of the trial court.

The factual record before us consists essentially of unsworn evidence,[6] and that evidence, in our view, does not sufficiently point either to Ms. B.'s innocence of the charge or to her guilt. This problem begins with the statements allegedly made by the complainant, B.S. According to documents relied on by the government, B.S. was interviewed at the Children's Advocacy Center on July 2, 2008, and he reported that on May 25, 2008, Ms. B. choked him when he was trying to get some chewing gum. The government asserts that on July 27, 2008, B.S. "positively identified the defendant *as the person who choked him.*" (Emphasis added.) It is reasonable, though arguably not obligatory, to infer from the government's proffer that B.S. adhered, for a period of more than three weeks, to his claim that Ms. B. had choked him. The record is devoid of any explanation regarding why B.S. would make such an accusation if it was not true.[7]

Ms. B. counters, on the other hand, in a motion filed by her attorney, that B.S. testified under oath at the neglect hearing that Ms. B. did *not* choke him or harm him. She asserts that on being advised of this testimony, the prosecutor interviewed B.S. and J.H. and immediately decided to abort the prosecution.[8] Sworn testimony is obviously more powerful than a statement not given under oath, and at the conclusion of an evidentiary hearing on remand, it may well carry the day. But courts often view recantations of previous accusatory statements with suspicion or skepticism, *see Wadlington v. United States,* 428 F.3d 779, 784 (8th Cir.2005), in part because "witnesses offering recantations are often facing radically different pressures than [*sic* ] they were at the time of the initial trial."[9] *Higgs v. United*

---

**6.** Because, as we have explained, the trial judge did not rule on Ms. B.'s request for access to a transcript of the child neglect hearing, the testimony of B.S. and J.H. at that hearing is not a part of the record. Hearsay testimony is, however, admissible at a hearing on a defendant's motion to seal. Super. Ct. Crim. R. 118(e).

**7.** On May 28, 2008, three days after the alleged choking, the police were called to Ms. B.'s home. According to the government, Ms. B. was "holding a child and a Bible, shouting in a loud voice, and threatening to kill anyone who tried to take her baby or hurt her family." This alleged conduct does not substanti-

ate the choking allegation, but it does suggest that Ms. B.'s mental or emotional condition may have been consistent with the commission of this kind of offense.

**8.** The prosecutor's apparent view that she would not be able to prove Ms. B.'s guilt beyond a reasonable doubt does not necessarily mean, however, that Ms. B. can prove her innocence by a preponderance of the evidence.

**9.** We note, however, that the decisions in which skepticism of recantations has been expressed have generally concerned recantations of testimony under oath.

*States,* 711 F.Supp.2d 479, 513 (D.Md. 2010).

Moreover, the unsworn written statement by B.S., which Ms. B. submitted with her renewed motion, is not altogether helpful to her position. This statement was signed in the presence of Ms. B.'s attorney and of the PDS investigator. The obvious purpose of the statement was to counter the charge that Ms. B. had choked B.S. Although B.S. admitted that he had been disrespectful and stated that Ms. B. "grabbed my shoulders and pulled me," but that he was not hurt or scared, he did not deny that she had choked him, nor did he even address the specific issue whether or not she had done so. Moreover, the written statement concludes as follows: "That's all I have to say about this subject." A trier of fact might reasonably infer that this final sentence, combined with the failure of B.S. to address the allegation that Ms. B. choked him, suggests that he was unwilling to state unequivocally that the alleged choking did not occur. *See Pickett v. United States,* 822 A.2d 404, 407 (D.C.2003) (trial judge may draw inferences as to credibility based on fact that child was "at most equivocal in recanting her former statements").

J.H.'s unsworn statement is arguably more helpful than his brother's to Ms. B.'s cause, for unlike B.S., J.H. stated explicitly that Ms. B. "was definitely not choking [B.S.] at any time." Even as to J.H., however, there are some potentially troubling discrepancies. In his renewed motion filed on Ms. B.'s behalf, defense counsel represented that at the neglect hearing, J.H. had testified that B.S. had eaten some chewing gum after Ms. B. had told him not to do so, and that Ms. B. had

"smacked" B.S. No mention of a smack or slap is contained in J.H.'s signed statement.

## V.

Considering the record as a whole, we conclude that no impartial trier of fact can determine with any measure of confidence, without hearing the testimony of the witnesses, whether the allegation that Ms. B. choked B.S. is true or false. B.S. may or may not have been under some form of duress, either when he made and adhered to the allegation or, later, when he allegedly denied it. There may (or may not) be some reasonable explanation for his failure to deny it explicitly in his handwritten signed statement, but it is significant that the statement was prepared in the presence of Ms. B.'s attorney, who was attempting to demonstrate that no choking occurred and would therefore be expected to have a categorical denial included in the statement if such a denial was consistent with B.S.'s account. Although J.H.'s signed statement is doubtless somewhat helpful to Ms. B., it may be inconsistent in part, at least by omission, with the testimony J.H. allegedly gave at the child neglect hearing,[10] and we do not believe that his statement obviates the need for an evidentiary hearing in order to ascertain all of the relevant facts and to make fully informed credibility determinations.

Section 16–802 constitutes important remedial legislation. As its title suggests, it provides for the "[s]ealing of criminal records on grounds of actual innocence." The legislature appropriately determined that an innocent person should not be forever stigmatized by an arrest that should not have occurred. Where a motion is filed

---

10. J.H. apparently testified that Ms. B. "smacked" B.S., but he made no mention of a smack in his signed statement.

within four years after the prosecution has been terminated, the movant's burden of proof is by a preponderance of the evidence—a relaxation of the prior "clear and convincing evidence" standard. *See* D.C.Code § 16–802(c). The law reduces the injustice that may be inflicted by false criminal charges.

At the same time, there is reason for a measure of caution in applying the statute. To a certain extent, sealing an arrest record has the consequence of rewriting history. Section 16–802(i) provides:

> The effect of relief pursuant to this section shall be to restore the movant, in the contemplation of the law, to the status he or she occupied before being arrested or charged. No person as to whom such relief has been granted shall be held thereafter under any provision of law to be guilty of perjury or otherwise giving a false statement by reason of failure to recite or acknowledge his or her arrest, or charge, or trial in response to any inquiry made of him or her for any purpose.

This means in effect that an individual who has in fact been arrested may, if his or her arrest record has been sealed, assert with impunity under oath that he or she has not been arrested or charged. The legislature has determined that this result is necessary in order to carry out the purposes of the statute, and we have no quarrel with that determination. In light of the consequences of the relief being sought, however, we think it important to ensure that a motion to seal is neither denied nor granted without an evidentiary hearing in the appropriate court in cases in which the factual record is as inconclusive as the one presently before us. Accordingly, the order of the Superior Court denying Ms. B.'s motion to seal is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*

OBERLY, Associate Judge, concurring:

I concur in the majority's decision to remand this case to hold an evidentiary hearing.